IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


ELIZABETH L. BROWN o/b/o S.B.                                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:14cv455-CWR-FKB

CAROLYN W. COLVIN, ACTING COMMISSIONER                          DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

---

## REPORT AND RECOMMENDATION

This cause is before the Court regarding the appeal by Elizabeth Brown of the

Commissioner of Social Security's final decision denying Brown's application for Supplemental

Security Income ("SSI") benefits on behalf of S.B., a minor claimant. In rendering this Report

and Recommendation, the Court has carefully reviewed the Administrative Record [8] regarding

Brown's claims (including the administrative decision, the medical records and a transcript of

the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Motion for Summary

Judgment [9] and supporting Memorandum [10], Defendant's Motion for an Order Affirming the

Commissioner's Decision [11] and supporting memorandum [12], and Plaintiff's rebuttal brief

[13].

For the reasons discussed in this Report and Recommendation, the Court finds that the

Commissioner's decision should be remanded for further consideration.  Accordingly, Plaintiff's

Motion for Summary Judgment [9] should be granted, and Defendant's Motion for an Order

Affirming the Decision of the Commissioner [11] should be denied to the extent set forth in this

Report and Recommendation.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Elizabeth L. Brown, mother of the minor claimant, S.B., filed for

Supplemental Security Income ("SSI") disability benefits on behalf of S.B. on April 16, 2010.

[8] at 103.[1]  S.B. was born on April 26, 1998, and was a school-aged child nearly twelve (12)

years old at the time of filing.  *Id.*  In the request for disability, Brown alleged that S.B. was

disabled as of March 1, 2010, because of asthma, eye surgery at age six months, mental

retardation, learning disabilities, attention deficit disorder, and flat feet.  *Id.* at 120.

The Social Security Administration denied S.B.'s application initially and upon

reconsideration. *Id.* at 77, 86.  Brown requested a hearing, *id.* at 91, and the ALJ held a hearing

on April 3, 2012, at which she was represented by counsel.  *Id.* at 61-74.  After considering the

record, the ALJ issued an unfavorable decision on May 17, 2012.  *Id.* at 11-25.  At the time of

the hearing decision, S.B. was fourteen (14) years old.  On February 1, 2013, the Appeals

Council denied her request for review.  *Id.* at 1.  Thereafter, Brown appealed the matter to this

United States District Court.  On November 1, 2013, the Court granted the Commissioner's

Motion for Entry of Judgment under Sentence Four of 42 U.S.C. § 405(g).  *See* Order [19],

*Brown v. Commissioner*, Civil Action No. 4:13cv38-CWR-FKB.  After considering additional

information on remand, the Appeals Council again denied Brown's request for review. [8] at

339.  Therefore, the ALJ's May 17, 2012, decision became the final decision of the

Commissioner.  *Id.*  Plaintiff filed this action on June 10, 2014.

In her May 2012 decision, the ALJ concluded that S.B. (the claimant) suffered from the

"severe" impairments of borderline intellectual functioning and attention deficit disorder

---

[1]Citations reflect the original pagination of the administrative record.

("ADD").  *Id.* at 14.  However, the ALJ concluded that neither of these impairments nor a combination of these impairments meet, medically equal, or functionally equal the severity of one of the listings under the Listing of Impairments.  *Id.* at 15.  Without any discussion, the ALJ concluded that "[t]he medical evidence of record fails to document clinical findings of any psychologist or physician that suggest the claimant's impairments satisfy the severity of requirements of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 916.924, 416.925 and 416.926)."  *Id.*

The ALJ proceeded to review the evidence to determine whether S.B.'s impairments or combination of impairments are functionally equivalent to the severity of the listings.  Under 20 C.F.R. § 416.926a, a child whose impairments do not meet or medically equal any listing may, nevertheless, have limitations that "functionally equal the listings."   20 C.F.R. § 416.926a(a). To meet this standard, the ALJ considers a child's functions in six different areas or "domains." 20 C.F.R. § 416.926a(b)(1).  The domains are acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being.  *Id.*  To functionally equal the listings, a child's impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."   20 C.F.R. § 416.926a(a).

Pursuant to § 416.926a, the ALJ reviewed the claimant's degree of limitation in each of the six functional domains, as follows:

A. Acquiring and using information – The ALJ found that S.B. has a marked limitation in this domain because of her scores on various IQ tests.  *Id.* at 19.  A state agency consultant, Lisa Yazdani, Ph.D., noted that S.B.'s verbal IQ was 73, her performance IQ was 53, and her full

scale IQ was 60.  *Id.*  The ALJ noted that SB had been diagnosed with possible mental

retardation.  *Id.*  The ALJ also observed that S.B.'s Leiter IQ score was 53, and her WAIT scores

indicated that she was mildly mentally retarded.  *Id.*  The ALJ noted that her school records

indicated that her full scale IQ was 85, her school performance was better, and she has been able

to take "inclusion classes" at school.  *Id.*

B. Attending and completing tasks – The ALJ found that S.B. has less than marked

limitation in this domain based on responses to teacher questionnaires, educational records, and

Dr. Yazdani's evaluation of S.B.'s records. *Id.* at 20.  The ALJ noted that S.B.'s attention deficit

hyperactivity disorder ("ADHD")[2] was diagnosed as mild to moderate. *Id.*  The ALJ specifically

noted that claimant's teacher indicated that S.B. had "no problem paying attention when spoken

directly to, no problem sustaining attention during activities, and no problems carrying out single

step instructions.  All these factors indicate that although the claimant has some limitation in

attending and completing tasks, it does not rise to the level of disability." *Id.*

C.  Interacting and relating with others – The ALJ found no limitation in this domain,

citing the opinions of a consultative examining psychologist, her teacher, and her mother.  The

consultative examining psychologist, Dr. Jan Boggs, concluded that S.B. appears to have normal

behavior and socialization at school.  *Id.* at 21, 319.  Her teacher, Ms. Mary Campbell, rated S.B.

as having "no problem" in ten of thirteen activities in this domain, and only a "slight problem"

on a weekly basis in three activities.  *Id.* at 21, 302.  Finally, the ALJ observed that in December

2011 claimant's mother expressed to a medical professional that she was pleased with S.B.'s

---

[2]The Court observes that the ALJ concluded that S.B. has the severe impairment of
attention deficit disorder ("ADD"), *id.* at 14, but, in other portions of the opinion, the ALJ
references the diagnoses of ADHD made by Dr. Boggs and Dr. Yazdani.  *See id.* at 17, 19-20.

school behavior.  *Id.* at 21, 334.

D.  Moving about and manipulating objects – The ALJ found no limitation in this domain which considers gross and fine motor skills, citing the opinions of S.B.'s teacher, Ms. Campbell, and the state agency consultant, Dr. Yazdani.  *Id.* at 22.

E.  Caring for yourself – The ALJ found no limitation in S.B.'s ability to care for herself. The ALJ cited Dr. Boggs's opinion which observed that S.B. was nicely dressed, groomed, and appeared mature, and that she appeared to have normal behavior and socialization at school.  *Id.* The ALJ also based her conclusion on the opinions of S.B.'s teacher and Dr. Yazdani, who indicated that S.B. had no limitation in her ability to care for herself.  *Id.*

F.  Health and physical well-being – The ALJ found no limitation in this area that considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. *Id.*  The ALJ noted that S.B. takes her medication daily, and that her mother stated that a certain ADHD medication, Straterra, has helped S.B.  *Id.*  Finally, the ALJ noted that Dr. Yazdani indicated that S.B. has no limitation in this domain.  *Id.*

Thus, the ALJ found that S.B. had a "marked" limitation in one domain, "less than marked" limitation in another domain, and no limitation in the remaining four domains. Therefore, because the ALJ found that S.B. did not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, the ALJ concluded that S.B. has not been disabled since April 15, 2010, the date the application was filed.  *See* 20 C.F.R. § 416.926a(a).

## II.  MEDICAL AND PSYCHOLOGICAL HISTORY

The Court has determined that a detailed recitation of the records is not necessary because the parties summarized S.B.'s records in their briefs, and the ALJ provided thorough summaries in her decision.  Nevertheless, a review of the observations and evaluations of certain examiners will aid in the consideration of this case.

The Court observes that S.B. was born by emergency c-section on April 26, 1998, prematurely at 29 weeks gestation. [8] at 191.  At birth, S.B. weighed approximately 1,359 grams, or approximately three pounds.  *Id.*  In the first week after her birth, she suffered several seizures.  *Id.* at 191-192.  At discharge on June 2, 1998, the doctor commented that she sustained grade 2 intraventricular hemorrhages with hydrocephalus, confirmed by ultrasounds.  *Id.* at 192-193.  When she was released from the hospital, she weighed 2,106 grams or approximately four and one-half pounds.  *Id.* at 191.

S.B.'s treating physician, Dr. William Lewis, with Forest Family Practice, prescribed medication in August 2009 to treat S.B. for ADD.  *Id.* at 296.  The doctor also arranged for S.B.'s further evaluation with the Child Development Clinic at the University of Mississippi Medical Center ("UMMC") in Jackson, Mississippi.  *Id.*

Medical professionals at the Child Development Clinic at UMMC evaluated S.B. on March 1, 2010, when she was almost twelve years old.  *Id.* at 265-279. In one examination, Twila Rawson, Ph.D., a child development psychologist, conducted a psychological assessment of S.B.  *Id.* at 278.  Rawson observed that S.B. was a willing, attentive, and cooperative child. *Id.*  On the Leiter International Performance Scale-Revised test, Rawson concluded that S.B. scored a "Full IQ of 53 indicating functioning in the mildly retarded range."  *Id.*  Suzanne Senter,

M.D., F.A.A.P., Assistant Professor of Pediatrics, evaluated S.B. and diagnosed her with mild

mental retardation, and "pes planus" or flat feet.  *Id.* at 265-277.

After her appointment at UMMC, S.B.'s treating physicina, Dr. Lewis, observed that S.B.

had been evaluated by UMMC, where she was diagnosed with mild mental retardation.  *Id.* at

295.  In a separate note, Dr. Lewis diagnosed S.B. with mental retardation.  *Id.* at 295.

Jan P. Boggs, Ph.D., evaluated S.B. on August 5, 2010. *Id.* at 317-320.  At the time of his

examination of S.B., he had received S.B.'s records from the Child Development Clinic at

UMMC.  *Id.* at 317.  Boggs commented that S.B.'s "attitude was cooperative," and that "[s]he

looked her age but seemed younger.  I would have estimated borderline learning ability."  *Id.* at

318.  Boggs administered the Wechsler Intelligence Scale for Children, III Edition, on which

S.B. achieved a Verbal IQ score of 73, a Performance IQ score of 53, and a Full Scale IQ score

of 60.  He commented that S.B.'s "full-scale IQ score of sixty consists of better verbal than

performance outcomes and falls in the mild mentally retarded range.  Her verbal skills were of

borderline quality and performance was very weak."  *Id.* at 319.  Considering his other testing of

S.B., Boggs concluded that S.B. had a "[h]istory of mental retardation diagnosis, [r]ule out

borderline intelligence, [and] ADHD, mild to moderate."  *Id.*

S.B.'s special education teacher from Newton Elementary School noted that S.B.'s full

scale IQ was 85 in November 2004, when she was six years old. *Id.* at 298.  An October 2010

summary report from the Newton County School District stated that S.B. achieved a Full Scale

IQ of 61 on the Universal Nonverbal Intelligence Test at age twelve years.  *Id.* at 283.

## III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to

support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and

whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and
> is: "such relevant evidence as a reasonable mind might accept to support a
> conclusion. It must do more than create a suspicion of the existence of the fact to
> be established, but 'no substantial evidence' will be found only where there is a
> 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162,

164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully

examine the entire record, but must refrain from re-weighing the evidence or substituting its

judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Conflicts in the evidence and credibility assessments are for the Commissioner and not for the

courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the

Commissioner's decision is supported by the evidence, and the proper legal standards were

applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d

208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

To be sure, a disability claimant has the burden of proving that his condition meets or

equals a listing, and he or she must manifest all of the specified criteria of a particular listing to

meet this burden. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). "An impairment that manifests

only some of those criteria, no matter how severely, does not qualify."  *Id.*  If a claimant's

condition meets or equals the "listed" impairments, he or she is conclusively presumed to be

disabled.

-8-

Nevertheless, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The ALJ is "not always required to do an exhaustive point-by-point discussion." *Id*. But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not." *Id*. (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

<u>Special Considerations for Childhood Disability</u>

Social Security Administration procedures for determining childhood disability require "a three-step process, under which the [ALJ] . . . must determine (1) that the child is not engaged in substantial gainful activity; (2) that the child has an impairment or combination of impairments that is severe; and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. § 404." *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 84 (2d Cir. 2003). "In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals" an impairment listed in Appendix 1, Subpart P, of Social Security Regulation No. 4 (the "Listings"). *Id. See also* 20 C.F.R. § 416.924 (2010). As stated above, to evaluate functional equivalence, "[t]he ALJ considers how a child functions in his activities 'in terms of six domains': '(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being.'" *Id.* (quoting 20 C.F.R. § 416.926a(b)(1)).

"The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of 'listing-level severity,' that is, an 'extreme' limitation in one of these domains, or 'marked' limitations in two or more domains." *Id.* (quoting 20 C.F.R. § 416.926a(a)).

IV. DISCUSSION OF THE ALLEGED ERRORS
 AND APPLICABLE LAW

Plaintiff argues that the ALJ's decision should be reversed on two bases, as follows:

1. The ALJ's finding that the child does not meet the listing of 112.05(C) or 112.05(D) is not supported by substantial evidence.

2. The ALJ misinterprets the findings of Dr. Boggs to find borderline intellectual functioning.

The Court will address each alleged error, in turn.

A.  Is the ALJ's finding that S.B. does not meet the Listings

of § 112.05(C) or § 112.05(D) supported by substantial evidence?

Brown first argues that the ALJ erred when she did not properly consider whether S.B.'s impairments meet the requirements of Listings § 112.05(C) or § 112.05(D) of 20 C.F.R. Part 404, Subpart P, Appendix 1.  With regard to the Listings, the ALJ's entire discussion consisted of the following two sentences, which concluded that S.B.'s impairments:

> individually or in combination, do not meet or medically equal the criteria for any listed impairment.  The medical evidence of record fails to document clinical findings of any psychologist or physician that suggest the claimant's impairments satisfy the severity requirements of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

[8] at 15.

Plaintiff argues that the ALJ's discussion, as recounted above, fails to evaluate S.B.'s mild mental retardation findings by the psychologists according to the Listings.  She further argues that the ALJ provides no analysis of whether S.B. exhibits adaptive deficits sufficient to

-10-

meet the Listings.  In short, Brown argues that S.B. meets the requirements of § 112.05(C) when

one considers her IQ scores, and that she meets the requirements of § 112.05(D) when one

considers her IQ scores along with her ADD as the required element of a physical or other

mental impairment imposing an additional significant limitation of function.   Brown asserts,

furthermore, that S.B. has been prejudiced by this failure, and that this failure makes meaningful

review impossible.

      The relevant portion of § 112.05, currently entitled "Intellectual Disability," states that

this condition is:

> Characterized by significantly subaverage general intellectual functioning with
> deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A,
> B, C, D, E, or F are satisfied.
>
>             * * *
>
> C. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other
> mental impairment imposing an additional and significant limitation of function[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 112.05 (C) - (D) (2015).

      As discussed in Section II *supra,* three separate IQ tests were administered to S.B. at age

twelve, and she achieved full scale scores of 53, 61, and 60 on the tests. In addition, she has been

diagnosed with ADD, which the ALJ found was a "severe" impairment.  Although the ALJ

referenced these IQ tests when she evaluated S.B. in the six functional domains under §

416.926a, she failed to set forth her reasons for finding that S.B. did not meet the Listings of §

112.05(C) and § 112.05(D) when evaluating the child.  Although the ALJ is not required to do an

exhaustive point-by-point discussion, she utterly failed to mention the IQ testing and the ADD diagnosis as they related to any Listings.  A bare and summary conclusion that Plaintiff does not meet or equal a listing is "beyond meaningful judicial review."  *Audler*, 501 F.3d at 448.   Put another way, "the ALJ offered nothing to support her conclusion at this step and because she did not, 'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'" *Id.* (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

However, an ALJ's failure to adequately explain her finding at this stage does not require remand, unless it affects the claimant's substantial rights.  *Id.*  Given the documentation of testings, examinations, school records, and medical records of S.B., the ALJ's failure to explain her conclusions on the medical equivalence of S.B.'s impairments to the Listings is an error which affects S.B.'s substantial rights.  Moreover, absent some explanation from the ALJ to the contrary, it appears, based on the evidence presented, that S.B. has met her burden of demonstrating that her impairments meet the Listings requirements. *See Audler*, 501 F.3d at 449 ("Absent some explanation from the ALJ to the contrary, [the claimant] would appear to have met her burden of demonstrating that she meets the Listings requirements . . . and therefore [the claimant's] substantial rights were affected by the ALJ's failure to set out the bases for [the] decision at step three.").

The undersigned emphasizes that the Court has not re-weighed the evidence, nor is it substituting its judgment for that of the Commissioner.  Rather, in this instance, the ALJ has offered nothing to support her conclusion on this issue, and the undersigned simply cannot determine whether the ALJ's decision is based on substantial evidence or not.  Put another way, "it is simply unclear whether [the ALJ's] decision is supported by substantial evidence since no

explanation was provided." *Pope v. Astrue*, 2014 WL 1324063, *3 (S.D. Miss. Mar. 31, 2014)(Bramlette, J.)(remanding case for additional proceedings based on *Audler*). Accordingly, the undersigned recommends that this case be remanded.  On remand, the ALJ shall set forth in detail her reasoning as to whether S.B. meets the severity requirements of Listings § 112.05(C) and § 112.05(D).

### B.  Did the ALJ misinterpret the findings of Dr. Boggs
### to find borderline intellectual functioning?

Plaintiff argues that the ALJ's conclusion that S.B. has borderline intellectual functioning, rather than mild mental retardation, is based on a misinterpretation of the opinion of Dr. Boggs, the consulting psychologist.  In essence, Brown argues that the ALJ, as a layman, has made her own diagnosis of the medical evidence, despite three other diagnoses of mild mental retardation in the record.

Indeed, a medical doctor and a psychologist with the Child Development Clinic of UMMC observed S.B. and administered tests which led to their diagnoses of mild mental retardation.  Likewise, S.B.'s treating physician diagnosed her with mild mental retardation.

After a one-time examination of S.B., during which Dr. Boggs administered an intelligence test and an achievement test, he concluded that S.B. has a "[h]istory of mental retardation diagnosis[,] [r]ule out borderline intelligence[,] [and] ADHD, mild to moderate." [8] at 319. Based on Dr. Boggs's "rule out borderline intelligence" conclusion, the ALJ determined that S.B. has the severe impairment of  "borderline intelligence."

The undersigned recognizes that "the ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).  However,

the ALJ apparently ignored the "rule out" language of Dr. Boggs's "rule out borderline intelligence" diagnosis to conclude that S.B. has borderline intelligence, despite the existence of three other medical opinions that conclude that S.B. has mild mental retardation.

"The ALJ has considerable discretion in reviewing facts and evidence, but, as a layman, he is not qualified to interpret raw medical data in functional terms." *Meaders v. Colvin*, 2014 WL 3756355, *4 (N.D. Miss. July 30, 2014)(citing *Perez v. Secretary of Health and Human Servs.*, 958 F.2d 4455, 446 (1st Cir. 1991)). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 173 F.3d 31, 35 (1st Cir. 1999). When reviewing the evidence in the record, "the ALJ must consider *all* the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)(citations omitted)(emphasis added).

Because no medical professional has explicitly diagnosed S.B. with "borderline intelligence," the undersigned finds that the ALJ's determination is not supported by substantial evidence. Accordingly, the undersigned recommends that this matter be remanded to the Commissioner for further consideration, and, if deemed necessary, further testing and evaluation of the claimant.

V. CONCLUSION

In sum, the undersigned finds that this matter should be remanded to the Commissioner for further consideration. Accordingly, Plaintiff's Motion for Summary Judgment [9] should be granted, and Defendant's Motion for an Order Affirming the Decision of the Commissioner [11]

should be denied to the extent set forth in this Report and Recommendation.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 4th day of August, 2015.

 /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE